RUSSELL NAYMARK (SBN 196956)
American Federation of Musicians
of the United States and Canada
3220 Winona Avenue
Burbank, CA 91504
Telephone: 818-565-3400
Facsimile: 212-764-6134
Email: rnaymark@afm.org

JENNIFER P. GARNER *(pro hac vice
application forthcoming)*
American Federation of Musicians
of the United States and Canada
1501 Broadway, 9th Floor
New York, New York 10036
Telephone: 917-229-0290
Facsimile: 212-768-7452
Email: jgarner@afm.org

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, | CASE NO.  2:20-cv-7255 |
| Plaintiff, | |
| v. | COMPLAINT |
| 212 PRODUCTIONS, LLC, | |
| Defendant. | JURY TRIAL DEMANDED |

## NATURE OF THE CASE

1.     This civil action is brought under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breaches of a collective bargaining agreement to which Plaintiff American Federation of Musicians of the United States and Canada ("AFM") and 212 Productions, LLC ("212 Productions") are parties.  The

1

agreement is known as the Television Videotape Agreement ("Agreement"), and the controversy arises in connection with 212 Productions's production and exhibition of the reality singing competition television series entitled *The Voice*.

2. On numerous occasions, 212 Productions has either under-paid or altogether failed to pay wages for a variety of Music Preparation Services covered by the Agreement, including for the services of orchestrating, transcribing, and copying written sheet music parts utilized by instrumentalists performing on *The Voice*. For example, 212 Productions has under-paid music preparation personnel by calculating wages for the creation of fully orchestrated scores as if they were reductions of orchestrations to a single-line melody with a sequence of chord symbols indicating changes in harmony (so-called "lead sheets"). 212 Productions also has mischaracterized exact transcriptions of existing orchestrations fixed in audio format as single-line lead sheets in an attempt to justify a lesser rate of pay to Musicians. At various times 212 Productions has simply ignored provisions of the Agreement requiring additional or premium rates of pay for a gamut of services, ranging from a modest $1.04 per page fee for adding bar numbers to staves to a premium of time-and-a-half for working through the night in order to meet tight production deadlines, resulting in non-payment to Musicians for those services.

3. In addition to wage under-payments and non-payments for Music Preparation Services performed in the production of *The Voice,* 212 Productions also has failed to pay music preparation personnel all appropriate residual payments for reruns of *The Voice*, as well as for exhibitions of the program in foreign territories and for uses of musical excerpts from the program in other entertainment programs.

4. In each instance where 212 Productions has failed to pay Musicians all wages and residuals owed to them, 212 Productions also has failed to make contractually required pension contributions, which are calculated as a percentage of all earnings of whatever nature covered by the Agreement.

5.     By way of this action, AFM seeks damages for all unpaid wages, fees, premiums, and residuals, plus all allied pension contributions, owing to or on behalf of Musicians who perform Music Preparation Services in connection with *The Voice*.

JURISDICTION AND VENUE

6.     This Court has jurisdiction over the case and the parties pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1331.

7.     Venue lies in this District pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1391(b).

PARTIES

8.     Plaintiff AFM is an international labor organization representing professional musicians employed in the United States and Canada in, among other things, production of live television programs.  AFM is incorporated in the state of California. Its principal office is located at 1501 Broadway, 9th Floor, in New York City.  AFM is a "labor organization representing employees in an industry affecting commerce" within the meaning of the LMRA.

9.     Defendant 212 Productions, LLC, is a Delaware limited liability corporation whose principal place of business is located at 245 North Beverly Drive, Beverly Hills, California.  212 Productions is a television production company that employs musicians represented by AFM in connection with its production of the reality television series *The Voice*.  212 Productions is an "employer" within the meaning of the LMRA.

STATEMENT OF FACTS

10.     AFM and 212 Productions are parties to a labor agreement known as the Television Videotape Agreement ("Agreement"), a true and correct copy of which is attached hereto as Exhibit 1.

11.     The term of the Agreement commenced on January 27, 2013, initially expired on February 2, 2016, and has been extended by written agreement from February

3

COMPLAINT
CASE NO.  2:20-cv-7255

2, 2016, until a new agreement is reached.  A true and correct copy of the extension agreement is attached hereto as Exhibit 2.

12.    The reality singing competition network television series entitled *The Voice* is produced by 212 Productions in Los Angeles, California.

13.    212 Productions engages the services of Musicians represented by AFM in the production of *The Voice* subject to the terms and conditions set forth in the Agreement.

14.    Paragraph 1(A) of the Agreement defines its scope of coverage, in relevant part, as follows:

> This Agreement shall cover and relate to members of the American Federation of Musicians of the United States and Canada (herein sometimes called the "Federation") wherever they may be employed by us in network television broadcasting or in producing programs for syndication, whether live or produced on videotape or kinescope, as Instrumental Musicians, Leaders, Contractors, Arrangers, Orchestrators, Copyists, Production Musicians and Librarians (herein sometimes called "Musicians") and to any other persons when they shall perform such services for us in the United States, its territories and possessions (including Puerto Rico), and in Canada.

15.    Exhibit III ("Music Preparation Services"), paragraph B of the Agreement defines the term "orchestrating" as "the labor of scoring the various voices and/or instruments of an arrangement without changing or adding to the melodies, counter-melodies, harmonies and rhythms."

16.    Pursuant to paragraph B of Exhibit III, per page wage rates for Orchestrators varies according to the specific requirements for the orchestration, as follows:

(a)    *For not more than ten (10) lines per score page:*

(i)    Orchestrating an arrangement per page $30.14
(ii)   Revoicing a score                            $13.27

(b)    For each additional single line part in excess
       of ten (10) parts per score page             $1.16

4

(c)   For adding lines to a score already orchestrated (other than revoicing a score) when performed by the original Orchestrator...   $1.48

(d)   For adding piano part, per score page   $3.05

(e)   Orchestrating the part (without score)   The combined rate for orchestrating & copying

(f)   For taking down a lead from voice, instrument or mechanical device including symbols (single line); each 4 bar unit   $7.54

(g)   For scoring a two (2) line or three (3) line piano conductor part from an orchestra score:

      each 4 bar unit (2 lines)   $14.00
      each 4 bar unit (3 lines)   $18.59

(h)   For scoring for solo piano, harp, accordion, etc., for individual performances; each 4 bar unit   $14.00

(i)   For scoring for (choral) voices (a page to consist of not more than four voices, which may include a piano part), with come sopras being paid for...each additional voice   $1.16

17.   Thus, Orchestrators may fix the instrumentation of a musical work in writing with varying degrees of detail and complexity, ranging from a single line of notation with the corresponding harmonizations being reduced to a sequence of chord symbols ("taking down a lead," "take-down," or "lead sheet") to ten or more lines per score page indicating voice leading and counterpoint, as well as phrasing and dynamics for each instrument of the orchestration.  According to the schedule set forth in Exhibit III, paragraph B of the Agreement, the more complex the orchestration, the higher the per page wage rate.

18.   Pursuant to Exhibit III, paragraph B(4) ("Transcriptions"), "[p]ayment

for exact transcription of all parts of a composition from a mechanical device and recreating the orchestration [is calculated as] One hundred fifty percent (150%) of the applicable orchestration scale per score page."

19.    The "applicable orchestration scale" for purposes of calculating rates of pay for exact transcriptions is determined by the complexity of the original orchestration to be transcribed from audio format into written format.  For example, if the making of an exact transcription of the audio orchestration requires writing ten lines per score page, the applicable orchestration scale per page would be 150% of $30.14, in accordance with Exhibit III, paragraph B(3)(a)(i).

20.    212 Productions has failed to apply the appropriate  wage scales set forth in the Agreement for Music Preparation Services provided by Orchestrators for *The Voice*, and consequently has under-paid Musicians for their services.

21.    For instance, instead of paying the applicable per page rate for orchestrating an arrangement (payable at a minimum of $30.14 per page, or more if over ten lines per page), 212 Productions has paid for these services at the rate that would be applicable to single-line "take-down" or "lead sheet" score reductions utilizing chord symbols (payable at $7.54 per 4 bar unit), resulting in under-payment of wages to Musicians.

22.    Similarly, in connection with the production of *The Voice*, 212 Productions has calculated wages for exact transcriptions of orchestrations originally fixed in audio format at the rate that would apply to the reduction of an orchestration to a single-line lead sheet with chord symbols, resulting in wage under-payments.  This practice is especially nonsensical, as there is no audio format equivalent of a lead sheet capable of being transcribed.

23.    Exhibit III, paragraph C of the Agreement sets forth additional page rates and fees for copying individual parts, adding lyrics or words, numbering bars, and

adding chord or other symbols, as well as premium rates for working through the night (from 6:00 p.m. to 9:00 a.m.), and for work performed on Sundays and holidays.

24.    212 Productions on multiple occasions has failed to pay Musicians who work on *The Voice* for Music Preparation Services covered under Exhibit III, paragraph C of the Agreement, including for copying parts, adding lyrics or words, numbering bars, and/or adding chord symbols or other symbols, resulting in under-payment of wages to Copyists and other persons performing such services.

25.    212 Productions on multiple occasions has failed to pay premium rates for covered Music Preparation Services performed for *The Voice* beyond an eight hour span, for work between the hours of 6:00 p.m. and 9:00 a.m., and/or for work performed on Sundays and holidays, as is required by Exhibit III, paragraphs C(17) and E(5).

26.    In addition to the various wage items set forth in Exhibit III, Musicians who perform Music Preparation Services in connection with the production of television programs also are entitled to residual payments for subsequent uses of recordings of music from the original live television broadcasts.  For example, paragraph 5(F) ("Use of Excerpts ('Clips')") of the Agreement provides in relevant part:

> ...[e]xcerpts which contain music from television programs...may be used in an entertainment program (including, but not limited to, an "anniversary" program) produced under this Agreement, provided that all those rendering musical services for the original production receive payment of an amount, per excerpt, equal to 50% of the applicable air rate of the program in which the clip is being utilized...

.

27.    Notwithstanding the express terms of paragraph 5(F) of the Agreement, 212 Productions has failed to pay music preparation personnel for all uses of clips containing music from *The Voice*.

28.    Music preparation Musicians also are entitled to residual payments for reruns of television programs under the terms of the Agreement.  Specifically, paragraph

8 ("Reuse"), subparagraph (A)(iii) of the Agreement provides that Arrangers, Orchestrators, Production Musicians, Copyists and Librarians "shall receive the applicable percentage payments for reuse based on actual wages earned at scale" for reruns of a television program.

29.    Notwithstanding the express terms of paragraph 8(A)(iii), AFM believes, on the basis of the extent to which Musicians have been under-paid, that 212 Productions has failed to pay Musicians who have performed Music Preparation Services for *The Voice* all residual payments owed to them for reruns of the program.

30.    Furthermore, paragraph 9 ("Foreign Use") of the Agreement provides that, unless the Producer gives prior notice to AFM of its election to use an alternate formula:

> Programs made under this and prior agreements (except for programs already exhibited in foreign countries) may be broadcast...outside the United States, its territories and possessions (including Puerto Rico) and outside Canada and its territories and possessions, upon television stations where no admission is charged for the privilege of attending or viewing such broadcast, before, during or after transmission over television, upon payment to each Instrumentalist, Leader, Contractor, Production Musician, Arranger, Orchestrator, Copyist, and Librarian who performed services in connection with such program of a percentage of "Foreign Residual Base," determined in accordances with this Paragraph 9.

31.    Notwithstanding the express terms of paragraph 9, AFM believes, on the basis of the extent to which Musicians have been under-paid, that 212 Productions has failed to pay  Musicians who have performed Music Preparation Services for *The Voice* all residual payments owed to them for exhibitions of the program in foreign territories.

32.    Each time that 212 Productions has under-paid or wholly failed to pay Musicians all earnings of whatever nature covered by the Agreement, 212 Productions also has failed to make required contributions to the applicable pension fund, which contributions are to be calculated as a percentage of earnings in accordance with paragraph 7 ("Pension Welfare Funds") of the Agreement.

33.     212 Productions has failed adequately to explain its calculations of wages and residuals, and has failed to pay all outstanding sums and pension contributions owed to or on behalf of Musicians who perform Music Preparation Services in connection with *The Voice*.

<u>CAUSE OF ACTION</u>

**Breach of a Labor Agreement**
**29 U.S.C. § 185**

34.     AFM incorporates the preceding paragraphs 1 through 33 above as if fully restated.

35.     212 Productions is obligated to pay wages, residuals and benefits as set forth in the Television Videotape Agreement, including without limitation as provided in paragraphs 5, 6, 7, 8, 9, and Exhibit III ("Music Preparation Services") of the Agreement, to Instrumental Musicians, Leaders, Contractors, Arrangers, Orchestrators, Copyists, Production Musicians, Librarians, and any other persons when they perform such services in connection with *The Voice*.

36.     212 Productions has failed and refused to pay Musicians the applicable scale wages for creating orchestrations of arrangements for *The Voice*. Instead, 212 Productions has applied the rate that would be applicable had the Musicians reduced orchestrations of arrangements to a single line plus chord symbols ("taking down a lead," "take-downs," or "lead sheets"), resulting in under-payments to those Musicians.

37.     212 Productions's actions as described in paragraph 36 above violate paragraph 6 and Exhibit III, paragraph B(3) of the Agreement.

38.     212 Productions has failed and refused to pay Musicians employed in the production of *The Voice* the rate of one hundred fifty percent (150%) of the applicable orchestration scale per score page for creating exact written transcriptions of all parts of an orchestration fixed in audio format that is playable from a mechanical device. Instead,

9

212 Productions has applied the rate that would be applicable had the Musicians reduced an orchestration to a single line plus chord symbols ("taking down a lead," "take-downs," or "lead sheets"), resulting in under-payments to Musicians.

39.     212 Productions's actions as described in paragraph 38 above violate paragraph 6 and Exhibit III, paragraphs B(4) and B(3) of the Agreement.

40.     212 Productions has failed and refused to pay Musicians all applicable wage items owed for Music Preparation Services performed for *The Voice*, including all applicable page rates for copying, all applicable fees for adding lyrics or words, all applicable fees for numbering bars, and/or all applicable fees for adding chord symbols or other symbols.

41.     212 Productions's actions as described in paragraph 40 above violate paragraph 6 and Exhibit III, paragraph C of the Agreement.

42.     In connection with production of *The Voice*, 212 Productions has failed and refused to pay Musicians all applicable premium wage rates for working from 6:00 p.m. to 9:00 a.m., for work performed on the same job at any time following a call back less than eight (8) hours after prior dismissal during premium pay hours, for work in excess of eight (8) hours in one (1) day, and/or for work on Sundays and holidays.

43.     212 Productions's actions as described in paragraph 42 above violate paragraph 6 and Exhibit III, paragraphs C(17) and E(5) of the Agreement.

44.     212 Productions has failed and refused to pay Musicians who perform Music Preparation Services for *The Voice* for all uses of excerpts that contain music from the program in other entertainment programs produced under the Agreement.

45.     212 Productions's actions as described in paragraph 44 above violate paragraph 5(F) ("Use of Excerpts ('Clips')"), subparagraph 2(b)(i) of the Agreement.

46.     212 Productions has failed and refused to pay all residual payments owed to Musicians for reruns of *The Voice*.

47.     212 Productions's actions as described in paragraph 46 above violate paragraph 8 ("Reuse") of the Agreement.

48.     212 Productions has failed and refused to pay all residual payments owed to Musicians for exhibitions of *The Voice* in foreign territories.

49.     212 Productions's actions as described in paragraph 48 above violate paragraph 9 ("Foreign Use") of the Agreement.

50.     212 Productions has failed and refused to pay to the applicable pension fund all pension contributions owed on all earnings of whatever nature covered by the Agreement on behalf of Musicians who perform Music Preparation Services in connection with the production of *The Voice*.

51.     212 Productions's actions as described in paragraph 50 above violate paragraph 7 ("Pension Welfare Funds") of the Agreement.

52.     As a result and consequence of 212 Productions's breaches of the Agreement by its failure to correctly characterize and pay all wages, fees, premiums and residual payments owed to Musicians who perform Music Preparation Services in connection with the production and exhibition of *The Voice*, Musicians represented by AFM have incurred economic losses estimated to be hundreds of thousands of dollars. In addition, Musicians have been harmed by the loss of contributions to their pensions and the time value of those lost contributions.

## JURY DEMAND

AFM demands a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, AFM requests the Court enter judgment as follows:

(i)     For an award of damages in favor of AFM and the Musicians it represents for all economic losses that Musicians have incurred as a result of breaches of the Television Videotape Agreement by 212 Productions, LLC, in an

11

COMPLAINT
CASE NO.  2:20-cv-7255

amount to be determined at trial;

(ii)  For an order awarding AFM and the Musicians it represents pre-judgment and post-judgment interest;

(iii)  For an order awarding AFM a reasonable attorney's fee and reimbursement of its costs of suit; and

(iv)  For an order awarding such other and additional relief this Court may deem appropriate to remedy 212 Productions, LLC's breaches of the Agreement and to protect against future violations of the Agreement by 212 Productions, LLC, in the production of live television programs.

DATED: August 12, 2020                    Respectfully submitted,

                                          AMERICAN FEDERATION OF
                                          MUSICIANS OF THE UNITED
                                          STATES AND CANADA

                                          */s/ Russell Naymark*
                                          RUSSELL NAYMARK (SBN 196956)
                                          3220 Winona Avenue
                                          Burbank, CA 91504
                                          Telephone: 818-565-3400
                                          Facsimile: 212-764-6134
                                          Email: rnaymark@afm.org

                                          and

                                          JENNIFER P. GARNER *(pro hac vice*
                                          *application forthcoming)*
                                          1501 Broadway, 9th Floor
                                          New York, New York 10036
                                          Telephone: 917-229-0290
                                          Facsimile: 212-768-7452
                                          Email: jgarner@afm.org

                                          *Attorneys for Plaintiff*

COMPLAINT
CASE NO.  2:20-cv-7255